The next case is Case No. 16-1130, Belsito Communications v. James Decker. May it please the Court. Thank you. My name is Robert Istix, and I represent the appellants Belsito and Blackton. May I have two minutes for rebuttal? Yes. Thank you. The Fourth Amendment issue that's presented to this case, I think, is very straightforward. The appellants are asking this Court to file a holding of the Ninth Circuit in Menotti v. Seattle. We want this Court to hold that in order for there to be exigent circumstances to justify a warrantless seizure, there has to be something more than simply the fact that potential evidence can be easily destroyed. We submit that in the cases that were relied upon by the District Court, Cutt v. Murphy and Illinois v. McCarthy, those cases, there were exigent circumstances. There was more than simply the fact that the potential evidence was easily destructible. There were facts that showed a very high likelihood, a probability, that if the minimum restraints were used, that the evidence would, in fact, be destroyed by the suspect. There is no such evidence in this case. There hasn't been any claim by the Attorney General that there is evidence showing that the evidence would be destroyed. We submit that if this Court were to not follow Menotti and say that if you're going to have a seizure incident to an arrest, you have to have an arrest, or at least meet some of the general type circumstances, that if this Court were not to go that way, and if the Court were to adopt the holding of the District Court and adopt the arguments of the State, then it would be opening a floodgate that would be wide indeed. Because the Court would essentially be holding that any time there is potential evidence in the form of a document, whether that document be a digital document, like what was on the memory card in this case, or a paper document, which is also easily destroyed. Any evidence easily destroyed is seizable under that theory. And we submit that that's not tenable. It's contrary to settled Supreme Court law. It's contrary to settled law in all the circuits. And as the Menotti Court held with respect to the argument for qualified immunity, there just is not any basis to hold that a reasonable officer would believe in those circumstances that just because the memory card was destructible, it could be seized. The fact that a warrant was quickly requested is not dispositive. It doesn't matter. There shouldn't be an exception that, well, we can seize any amount of evidence as long as it's destructible, as long as thereafter the police officer will in due course seek a warrant. That is not an acceptable exception to the warrant. So I understand the argument you're making to us. You're conceding that for purposes of us deciding the appeal, we should assume that there was a probable cause for concluding that a crime committed, and your only challenge is on the exigent circumstances aspect of it? Our fourth and final challenge, yes, that this court, we're asking this court to make this holding on the assumption that there was probable cause. But just because there's probable cause to arrest, what we're arguing is assume there's probable cause to arrest. You still need exigent circumstances, and the fact that the potential evidence, potential evidence, is easily destructible is not an exigent circumstance sufficient to justify the warrantless seizure. That's our argument. So all of the findings with respect to the probable cause, we're not taking issue. And if the material is in a mobile vehicle and could easily leave the scene? Yes. Okay. Absolutely. That's clearly established. Clearly established. For the same reason that the Ninth Circuit refused to grant qualified immunity as a matter of law, and hold that, you know, if the state is going to reclaim what those exigent circumstances say, well, in this case, we really have a concern here. Not just this possibility that this defendant may get the idea to destroy these things, but we have a real concern that they're going to. Like at MAP. Like at MacArthur. Where, you know, in MAP, you have the fingernail sample, and there were sure signs that this suspect had reasonably concern with his hands going in his pockets, with his hands going behind his back, the jiggling sound in the pockets, him knowing that he's a suspect of a serious crime. All of these things were an indication, we've got to do something, or we're going to lose this fingernail evidence. And the same was true with MacArthur, where they detained the person for a couple of hours and not allowing him to go and supervise in his home. Why? Because they had, and the court at MacArthur said they had reason to fear that if they didn't do that, he was going to destroy the marijuana that was in his home. He saw his wife, who was having a bad time at the moment, angry at him, talking to the police, going over to the police. So they put two and two together and said, we've got to make sure that this isn't destroyed. This is not that case. This is only a case where, and using your honest hypothetical, this is only a case where a person can get back in his car and leave, not be arrested. They can leave. And yeah, there's a possibility out there that he could destroy the evidence. Just like there was a possibility in Minotti that the suspect, who was not arrested, could destroy his protest sign. And whoops, there goes good evidence in the prosecution of the case. So unless there's some existential circumstance to indicate that he's going to destroy it, then they need to get him a warrant first. So once the trooper had somewhat aggressively interfaced with your client, is that in and of itself not reason to think that there was the likely possibility that the evidence would be destroyed? I don't know what the aggressively interface that you're referring to. I'm referring to the questions that he asked, because unlike the other people on the scene who sort of seemed to accept his presence, this trooper seemed intent on trying to figure out who this guy was. And your Honor might be able to, or a jury or a court might be able to, draw the inference from that that Blanton knew that the officer didn't like what he was doing, didn't like him being there, and that there was a potential that he could be charged. He may have known all those things. But that doesn't give rise to an inference that there was a likelihood that he was going to destroy the evidence. And you'd like us to decide the case on the assumption that he did know all those things? That Blanton did? No. Because I think that the court has to decide the issue on the assumption that there was probable cause for arrest. Okay, and what about your client's knowledge of the officer's view that there was probable cause? What are we supposed to assume about that? I know in the Cup case, one of the factors that was considered was the fact that the defendant knew that he was a suspect. So I have to say that that could be a factor, that if someone knows he's a suspect, they're supposed to consider that. But I don't think that that in itself would give rise to the exigent circumstance. I just want to understand, this is summary judgment, right? Correct. So we're supposed to, you're the non-movement. Correct. So we generally view things in your favor? Right. But you're asking us, what are we supposed to view in your favor? You don't want us to view in your favor the possibility that there's no probable cause. Well, the reason is I can't ask the court to do that because I know what's contained in the record. There's probable cause. I'm trying to figure out where we draw the line. There's probable cause. There's reason to believe that Mr. Blanton understood that he was engaging in potentially culpable conduct. And I'm trying to figure out where, how do we decide that the officer reasonably believed that your client would likely destroy the evidence? Well, what we're saying is there isn't sufficient evidence in this record that Denker had reason to believe that he would destroy the evidence and the reason was that the situation was compelling enough. Again, the language used in the precedent is, is there a crisis situation here? Is there no alternative here but to take the camera because it's so likely that it's going to be, the film is going to be destroyed? Those are serious actions and circumstances and they're not to be inferred lightly. Again, the case law does say the court must be careful because if you're going to say as long as there's probable cause to arrest and as long as the suspect understands that he's being suspected of committing a crime by this officer, that those two things are enough to find exigent circumstance and the exception will swallow the rule immediately. Are we supposed to assume that he did know he was a suspect or not? I don't think it's relevant. But I don't, that's great, but I want to know what you're asking us to do. I'm not asking the court to assume that he knew that he was a suspect. Are you asking us to assume he did not know? I'm asking the court to treat that as an issue of fact for the jury. Which I think is asking us to assume he did not know on summary. Well, on summary judgment, correct. Correct. Applying that standard, we have to view the facts most favorable to the plaintiff, the non-movement. In this case, the non-movement says he did not commit any crime. We can't forget that. And the other thing he was convicted of, the one thing was that he had the red lungs flashing when he pulled up and was the last vehicle on the left-hand lane. And so we understand he did that as a precaution. If he's the last vehicle on the left-hand lane. So you think no jury could reasonably find that there was not probable cause?  I'm saying that whether or not, again, I'm sorry to be beating myself, Your Honor, but whether or not he knew that he was a suspect is not controlling in this case. Because even assuming he knew, and I don't think it's a reasonable assumption, because in his mind he wasn't committing any crimes. But even assuming that he did know, it would not give rise to exigent circumstances. See, the tricky part is that in the other cases you cite, Matt, there's an analysis that says the officer believed that the defendant would destroy evidence. Right. Which means that there's a recognition of some sort that the defendant would likely act and that the officer recognized that somehow the defendant would likely act. And I'm trying to figure out how we apply it to these circumstances. Decker says, I took it because it contained relevant evidence that he was in an area that was restricted and he would likely destroy it, or he would destroy it. I'm trying to figure out where we draw the line. I'm asking the court to draw the line by distinguishing likely to destroy it versus easily destroyed. Because the only thing that the state has been able to argue is that there was probable cause to arrest and the evidence was easily destroyed. That if he left the scene, he could easily destroy it simply by pushing a button on the camera. But being easily destroyed is not the same thing as he will likely destroy it. And that's a very important distinction that hasn't been recognized yet in this case. Because what Decker had to have, like in the Cupp case, like in the McArthur case, the two cases cited by the district court, what those officers had was evidence, in addition to the fact that he was a suspect, in addition to the fact that there was probable cause. They had circumstances that made it very reasonable for them to fear likely destruction in both cases. In this case there isn't. This is a case where you're looking at relatively minor offenses. You're looking at a dispute as to whether or not he had a right to be there. You're looking at a situation where this photographer, who does take pictures for the news media, leaves the scene. And what is it that this court can say to uphold a finding that this officer had reason to believe that he was going to leave and likely destroy the pictures that he took. Because the extent of the circumstances isn't just speculation based upon possibility of destruction. It's got to be more than that. Again, if it isn't, the exception, swallows, and rule in every document, digital or paper, will now be something that officers can take simply on the basis of probable cause to arrest with no evidence that those documents are likely to be destroyed. I know I reserved two minutes, so I think my time is up. I'll use the balance of the time. May it please the Court. My name is Matthew Broward, Assistant Attorney General on behalf of the State of New Hampshire, representing Trooper Decker. There's no serious dispute over whether or not there's probable cause that Blackton had committed a number of crimes. And it appears that the plaintiff on argument has conceded that point. Trooper Decker, and that, actually, if I could pause there, that's a key distinguishing factor from the cases that the plaintiff cites in their brief, Menotti, Glick, Iacobucci. Those cases were arrests or seizures that did not have probable cause as a fore matter. In this case, there was probable cause. Trooper Decker's actions were entirely reasonable based on a set of highly unusual facts in this case, including a repurposed ambulance with red lights flashing, somebody appearing to be an emergency rescue personnel without permission to be there. Decker's encounter, mind you, with Blackton was in response to a fatality on I-93. Trooper Decker's primary responsibilities that day were to investigate how somebody died. And Blackton, in dealing with Blackton on the scene, he needed to act quickly and decisively in his interactions with Blackton, and that's often what troopers need to do. That's what the whole basis of qualified immunity is for. A temporary seizure of the camera, this temporary seizure of this camera and the memory card, was reasonable given the circumstances that he sought to, given the circumstances, and he did sought to, sought a court warrant and obtained it within 24 hours. The camera itself was- What's the exigent circumstance for seizing it in the first place? So, Your Honor, this was in 2010, and in 2009 there was a New Hampshire Supreme Court case that is cited in my materials, State v. Robinson, 158 New Hampshire 792, and it says that exigent circumstances exist where police face a compelling need for immediate official action and a risk that the delay inherent in obtaining a warrant will create a likelihood that evidence will be destroyed. So it's not necessarily that the destruction of the evidence was imminent, but that it would create a likelihood that it would be destroyed. And in this case, Blackton- So what facts go into likely? Likely destruction. What facts here would lead one to believe that the evidence would be likely destroyed as opposed to, as counsel puts it, easily destroyed? Blackton was, he had a conversation with Decker. It was reasonable for, on facts that are undisputed, to infer that he knew that he was under investigation. He was already suspected of committing a crime of deception in terms of how he gained access to the scene, having red lights on his vehicle and his appearance, that this evidence could be easily destroyed. But so could the jacket that he wore that you claim was deceptive, and so could the car have been done away with, I suppose, less easily than destroying a camera, but they didn't act on any of those. The only thing they took was the camera, which- And the camera proves a crucial element of three of the charges that he was charged with. But so does some of the other evidence that they let him lead with. So if they were so fearful that he was likely to destroy evidence of one of the many crimes that you claim there was probable cause for, why should we believe that he took the camera as to one, but he let the other evidence go as to the other, that there was no likelihood that those would be destroyed, but somehow there's likelihood that the camera would be destroyed? Well, a key element in terms of impersonation certainly involves the appearance and the garb, but it was Trooper Decker's testimony that that is not so easily destroyed, that clothes in and of itself are not a very easy thing to destroy. He was saying that the actual push of one single button on that particular camera could have deleted and erased the actual evidence of the scene, which is a crucial element of being in the scene unlawfully. It places him within the emergency scene. And even putting the seizure itself aside, this is under a qualified immunity standard, so stepping back from the actual seizure, whether a trooper under the circumstances would reasonably believe that he was violating the Constitution when he seized the camera. And the one crucial fact that's undisputed is that he obtained permission and advice from a prosecuting attorney that he told him what the circumstances under which he encountered blacked in on the scene and said, I'm thinking of seizing the camera. The county attorney said, go ahead. So what trooper would reasonably believe that he was violating the Constitution after having received that advice? Putting aside that last fact, do you agree that the law is clearly established that he could have only affected the seizure if it was likely to be destroyed? No, no, Your Honor. I think that the law is under, it's not just an exigent circumstance analysis. Not an exigent circumstance analysis. You believe it's clearly established that he needed to show exigent circumstances in order to affect the seizure here? I do. Okay. And you believe it's clearly established that to show exigent circumstances, he needed to show it was likely that the evidence would be destroyed? Not that there was a likelihood that there was a, not likely that it would be destroyed. Your Honor, I disagree with you. It wasn't clearly established. What is the test that you agree is clearly established? At the time of the seizure, it was clear likelihood that evidence would be destroyed. Not that the evidence itself was going to be destroyed. It's that it creates an opportunity. And the MacArthur, the Illinois v. MacArthur case, I think is directly on point with this. Opportunity is different from likelihood, isn't it? What's that? Isn't opportunity different from likelihood? Likelihood is more probable than sheer opportunity. I would agree with that, Your Honor. So what's the likelihood here? What's that? What is the likelihood piece here? The likelihood is that he knew that he was under investigation, that he had already stated that he was with Panic Quick Rescue, that he, on three different occasions, that he left his credentials at home, despite the fact that the investigating officer had no reason to believe that he was actually in connection with this Panic Quick Rescue. And it places him on the scene, within the scene. So based on these circumstances, a reasonable trooper could effectuate that seizure. So if he had seized the other dog or anything else, would it be the same argument? I don't see that. As quickly as you can dispose of clothing, you can dispose of clothing as quickly as you can push the button, just about. So I'm trying to figure out how you make the distinction. Well, in this case, under the Illinois v. MacArthur, a seizure, a temporary seizure pending a search warrant is reasonable, as long as it's limited in time and limited in scope. And here it was limited in both time and scope. Arguably, if you start seizing without an arrest or impound the vehicle, you start expanding on scope. You just dropped out of the likelihood constraint. I'm sorry? When you just stated the test, you dropped out of the likelihood constraint, which you were telling us was clearly established. Yes. I'm sorry, I don't understand. Judge Thompson's not asking a thing about how long you hold it for. We're trying to figure out if a likelihood threshold test has to be met before you can seize. On your theory, it was likely that the camera pictures would be destroyed. Was it just as likely that the coat would be destroyed? Is there any way to treat those differently? Trooper Decker did treat them differently because of the larger... I understand that. Is there any legal matters or any basis for treating those differently? Just as likely the two, right? I suppose, yes, that there would be a likelihood. I do disagree, though, that it's just as easily to dispose of clothes as a digital matter. It's a digital camera or a little tiny memory card. But that's the second part. That's the easily part, not the likelihood part. The likelihood, if this man was going to destroy evidence and had a likelihood to destroy evidence, then you'd have to argue that his likelihood of destroying the camera was the same as the likelihood of him destroying the coat. You may argue that they're different in terms of the ease of destruction, which goes to exigency. But in terms of likelihood, you can't argue that those two are different. I see your point. I understand. It took me a while to get there, but I see your point. But to back up and say, as to assess the reasonableness of Trooper Decker's actions, he did see a distinction to it. So even if there was an equal likelihood of destroying either the panel items as opposed to the digital items, Trooper Decker's assessment on scene was reasonable, given the facts and circumstances of this case. I see my time is up, Your Honors. If there are no further questions, I will rest on my brief. Thank you. Thank you. First and foremost, my good adversary has stated that in Manatee there was not probable cause. That's not the case. In Manatee, the police officers did have probable cause. To believe that the suspect was in a restricted zone and therefore in violation of the law, and nevertheless Manatee held that there has to be more than just that and the possibility. In Manatee, did the plaintiff know he was suspected of being in a legal zone? Oh, yes. The court decided on that understanding? Well, his time was taken from him. The language that I recall is that there was no dispute that there was probable cause for the officer to believe that he was violating the law because he was in the restricted zone. And, Your Honor, I'd have to re-read the case to see if there was any discussion as to whether or not the suspect was aware that that was the belief of the officer. But there was certainly probable cause in that case. That's why we're relying upon it so heavily. It's the one case that we have found that is directly on point with this case. We haven't seen a circuit court decision as directly on point as that Ninth Circuit decision. And we're simply asking you to follow up. Did that come up as a qualified immunity case, too? Yes, it did. And the court said that the language of the Ninth Circuit was because the exceptions to the Fourth Amendment's are unreasonable within the meaning of the Fourth Amendment, unless accomplished pursuant to a judicial warrant issued by a neutral magistrate, a neutral and detached magistrate, after finding probable cause. We believe a reasonable officer in Smith's position would have understood that his warrantless seizure of the scope of sign without an arrest and without exigency affected the guarantees of the Fourth Amendment.  Instead, it was remanded and would be an issue of fact as to whether or not a reasonable officer under those circumstances would have believed he was violating the Fourth Amendment. I have run out of time, so I'll rely upon a brief for the remainder of the points, including Balsino's standing and interest in the First Amendment violation. Thank you very much. Thanks.